**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

CITY OF MEMPHIS,

     Plaintiff,

v.

HORN LAKE CREEK BASIN
INTERCEPTOR SEWER DISTRICT OF
DESOTO COUNTY, MISSISSIPPI;
DESOTO COUNTY, MISSISSIPPI; CITY
OF HORN LAKE; and CITY OF
SOUTHAVEN,

     Defendants.

Civil Action No. _____

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

COMES NOW Plaintiff, the City of Memphis, Tennessee ("Plaintiff" or "the City"), and for its Complaint for Declaratory Judgment against Defendant Horn Lake Creek Basin Interceptor Sewer District of DeSoto County, Mississippi ("the District"); Defendant DeSoto County, Mississippi ("DeSoto County"); Defendant City of Horn Lake ("Horn Lake"); and Defendant City of Southaven ("Southaven"), states as follows:

## THE PARTIES

1. Plaintiff, the City of Memphis ("the City"), is a municipal corporation organized under the laws of the State of Tennessee. The City is, therefore, a citizen of the State of Tennessee.

2. Defendant, the Horn Lake Creek Basin Interceptor Sewer District of DeSoto County, Mississippi ("the District"), is a utility district organized under the laws of the State of Mississippi. The District is, therefore, a citizen of the State of Mississippi. The District may be served with process by serving Jim Cook, its Director, at 979 Rasco Road W, Southaven, MS

38671.

3.      Defendant, DeSoto County, Mississippi ("DeSoto County"), is a division of the State of Mississippi.  DeSoto County is, therefore, a citizen of the State of Mississippi.  *Moor v. County of Alameda*, 441 U.S. 693, 717 (1973).  DeSoto County may be served with process by serving Lee Caldwell, as president of the DeSoto County Board of Supervisors, at 365 Losher Street, Hernando, MS 38632.

4.      Defendant, City of Horn Lake ("Horn Lake"), is a municipal corporation organized under the laws of the State of Mississippi.  Horn Lake is, therefore, a citizen of the State of Mississippi.  Horn Lake may be served with process by serving Allen Latimer, as Mayor of Horn Lake, at 3101 Goodman Rd. W, Horn Lake, MS 38637.

5.      Defendant, City of Southaven ("Southaven"), is a municipal corporation organized under the laws of the State of Mississippi.  Southaven is, therefore, a citizen of the State of Mississippi.  Southaven may be served with process by serving Darren Musselwhite, as Mayor of Southaven, at 8710 Northwest Dr., Southaven, MS 38671.

## JURISDICTION AND VENUE

6.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, filed for the purpose of resolving a real controversy regarding the rights and other legal relations between the parties under a written sewage treatment agreement relating to the City's provision of treatment and disposal of sewage wastewater collected by the District.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.  The District disputes the City's right to end treatment and disposal services to the District upon the expiration of the written sewage treatment

2

agreement, the annual cost of which is estimated to be over $1,000,000.00.  Thus, the value of the agreement at the center of this litigation exceeds the sum or value of $75,000.00.

8.      This Court has general and specific personal jurisdiction over Defendants based upon their continuous and systematic transaction of business in, and sufficient minimum contacts with, the State of Tennessee.  The Defendants are parties to the sewage treatment agreement which relates to the City's provision of treatment and disposal of sewage wastewater in the State of Tennessee.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## THE CONTROVERSY

**A.      Background**

10.     On February 6, 1975, the City and the District entered into a forty-year sewage treatment agreement ("1975 Agreement")[1] for the City to provide treatment and disposal of sewage wastewater collected by the District from the Horn Lake Creek Basin.  A true and correct copy of the 1975 Agreement is attached hereto as Exhibit A and incorporated herein.

11.     Under the terms of the 1975 Agreement, the wastewater collected would be delivered by the District to the City at the City's metering station connected to the City's sanitary sewer system.  *See* Exhibit A, 1975 Agreement, ¶ 2.

12.     In exchange, the District would pay the City for the treatment and disposal of the wastewater delivered to the City on a volumetric basis as measured by a metering station and outlined in a monthly statement.  *See* Exhibit A, 1975 Agreement, ¶ 3.

---

[1] The parties had originally entered into a sewage treatment agreement on June 6, 1972.  A Resolution approved by the City states that the 1972 agreement was "replaced and voided" by the 1975 Agreement.  A true and correct copy of the Resolution authorizing this action is attached hereto as Exhibit B and incorporated herein.

13.     The metering station would be constructed, owned, and maintained by the City. *See* Exhibit A, 1975 Agreement, ¶ 6.

14.     Under the terms of the 1975 Agreement, the District would own and operate any lines upstream from the metering station, and the City would own and operate sewage lines downstream from the metering station to the City's treatment plant.[2]  *See* Exhibit A, 1975 Agreement, ¶¶ 7-8.

15.     The 1975 Agreement also expressly provided that the "agreement shall remain in effect for forty (40) years from the date hereof and at the expiration of said time shall be subject to review and change agreeable to both parties."  *See* Exhibit A, 1975 Agreement, ¶ 11.

16.     On September 22, 1983, the parties entered into a supplemental agreement ("1983 Agreement") regarding the 1975 Agreement "with the intent of further defining the regulations affecting Industrial Dischargers and the manner in which they are to be administered."  A true and correct copy of the 1983 Agreement is attached hereto as Exhibit C and incorporated herein.

17.     Specifically, any commercial and industrial dischargers using the District's sewer system who were subject to additional treatment costs, whose wastewater contained incompatible pollutants, or whose flow exceeded 25,000 gallons per day were required to enter into written agreements that had to contain certain content and requirements. *See* Exhibit C, 1983 Agreement, ¶ 1.

18.     Because the City was going to be "ultimately responsible for the treatment of the wastewater generated," the 1983 Agreement outlined that "the City [was] the final approving

---

[2] At the time of the negotiations that led to the 1975 Agreement, the treatment plant contemplated by the discussions had not yet been completed.  In August of 1975, the T.E. Maxson Wastewater Treatment Plant located in the southern part of Memphis, Tennessee began operations and has been treating the wastewater collected and delivered from the District since that time.

authority for the above referenced Industrial Discharge Agreements." *See* <u>Exhibit C</u>, 1983 Agreement, ¶ 2.

19.     The 1983 Agreement also provided that "the effective duration of the February 5, 1975 Agreement as modified by this Supplemental Agreement shall be extended for a period of forty (40) years from date of execution of this Supplemental Agreement." *See* <u>Exhibit C</u>, 1983 Agreement, ¶ 8.

20.     In other words, the 1975 Agreement would now expire on September 22, 2023.

21.     The 1983 Agreement further outlined that "only the provisions of the February 6, 1975 Agreement that conflict in intent with the provisions set out herein are amended, and the remainder of said Agreement shall remain unaltered and fully binding on all parties." *See* <u>Exhibit C</u>, 1983 Agreement, ¶ 9.

**B.      Notification of Termination of Agreement**

22.     Although not required by the terms of either the 1975 or the 1983 Agreements, on March 28, 2018, Robert Knecht, the City's Director of Public Works sent notice of the City's intent to not renew its existing sewage treatment agreement with the District to Jim Cook, the Director of the Horn Lake Creek Basin Interceptor Sewer District.   A true and correct copy of the Letter from Knecht is attached hereto as <u>Exhibit D</u>.

23.     Materially, the City made clear that the existing sewage treatment agreement would remain in effect until its expiration on September 22, 2023.

24.     However, the City requested that the District begin development of a detailed plan of action to remove the District's users from the City's sanitary sewer system and provide a proposed schedule within six months of receipt of the notice, so the District could be thoroughly prepared for the expiration of the sewage treatment agreement that would occur in five years.

25.     The City wanted to allow adequate time for the parties to discuss the District's exit strategy, given that the District's alternative and replacement options for services could potentially include, among other things, multi-year construction proposals and projects including the permitting of such.

26.     Following this correspondence, the Mayor of the City of Horn Lake, Mayor Allen Latimer, and the Mayor of the City of Southaven, Mayor Darren Musselwhite, requested a meeting with the City's Mayor, Mayor Jim Strickland, to discuss the City's decision.[3]

27.     On October 10 and October 29, 2018, Mayor Strickland sent correspondence to these Mayors to reiterate that the City intended to terminate wastewater treatment and collection services to the District upon the expiration of the agreement.  True and correct copies of the Letters from Strickland are attached hereto collectively as Exhibit E.

28.     The letter asked again for a detailed plan of action for the removal of the District's users from the City's sanitary sewer system, along with a proposed schedule, to be submitted by December 1, 2018 for the City to review.

29.     The letter also advised that the City could be willing to make reasonable allowances to "conditionally extend the termination date should the engineering, design, and construction required to complete the removal of the District's user not be feasible by September 22, 2023."

30.     However, such allowances would be dependent on the City's Director of Public Works confirming that the conditional extension was indeed necessary because of technical feasibility issues.

31.     The Defendants did not submit any detailed plan of action to remove the District's

---

[3] Although neither are parties to the 1975 Agreement and the 1983 Agreement, both the City of Horn Lake and the City of Southaven are located in DeSoto County and serviced by the District.

users from the City's system or proposed schedule at the expiration of the sewage treatment agreement by December 1, 2018.

32.     Instead, on April 9, 2019, while communicating on related matters regarding the continued obligations of the sewage treatment agreement, the District, having retained counsel, stated that the District "disagrees that the existing agreement expires and that either party has the right to terminate the agreement."  A true and correct copy of the Letter from Counsel is attached hereto as Exhibit F.

33.     On June 24, 2019, more than a year after the City first sent notice, the City received a letter from Fisher Arnold, an engineering firm retained by the District, which outlined very preliminary efforts made by the District to consider alternative treatment services for its users, but gave no proposed schedule for the District's plans to separate its users from the City's sanitary sewer system in 2023.  A true and correct copy of the Letter from Fisher Arnold is attached hereto as Exhibit G.

34.     The letter spoke of the District's eventual separation as if it were only hypothetical rather than certain, stating "[t]he District cannot estimate when funding in an amount necessary to effect this separation will be acquired but if this change in treatment of sewage within the Basin occurs, we assure you we will be in discussion at the state and federal levels to assure an orderly separation."

35.     In fact, the letter indicated the District's "hope" that it could remain in the City's sanitary sewer system beyond the term of the sewage treatment agreement, despite the City sending consistent written notice that it would indeed cease providing wastewater treatment and collection services to the District upon the agreement's expiration in 2023.

36.     The City continues to perform its contractual obligations in compliance with the

requirements and terms of the 1975 Agreement and the 1983 Agreement.   And the City will continue to do so until the expiration of said Agreement, which is September 22, 2023, pursuant to the 1983 Agreement.

37.     The Defendants have rejected and refused to acknowledge the City's right to not renew the sewage treatment agreement, despite the fact that the City gave the District written notice more than five (5) years in advance.

38.     A justiciable controversy exists as to the interpretation of the 1975 Agreement and the 1983 Agreement as contemplated under 28 U.S.C. § 2201.  A declaratory judgment action is necessary to resolve a dispute and to afford relief from uncertainty with respect to rights and other legal relations as to the City and the District under the sewage treatment agreement as contemplated under applicable law.

## COUNT I - DECLARATORY JUDGMENT

39.     The City incorporates and reasserts the foregoing paragraphs as if fully set forth herein.

40.     The parties have a fundamentally different interpretation of the 1975 Agreement and the 1983 Agreement.

41.     The City has performed and will continue to perform its contractual obligations in compliance with the requirements and terms of the 1975 Agreement and the 1983 Agreement.

42.     With no requirement to do so, the City provided notice of its intent not to renew and to let the 1975 Agreement and the 1983 Agreement terminate at the expiration date of September 22, 2023, more than five (5) years beforehand, to afford the District sufficient time to formulate a detailed plan for removing the District's users from the City's sanitary sewer system.

43.     The Defendants have refused to take actionable steps to prepare for the timely

removal of the District's users from the City's system at the expiration of the sewage treatment agreement.

44.     The Defendants have refused to acknowledge the expressed term and effective term limit of the sewage treatment agreement and the City's inherent right to not renew any agreement following its expiration.

45.     There is no obligation on the part of the City under either the 1975 Agreement or the 1983 Agreement that mandates continued treatment and disposal of wastewater collected by the District beyond the term of said Agreements.

46.     The Defendants have wrongfully disavowed the City's right to terminate the 1975 Agreement and the 1983 Agreement upon the expiration date, contrary to and in defiance of the plain language of the Agreements.

47.     As described above, there is an actual and justiciable controversy between the parties concerning the City's right to allow the sewage treatment agreement to terminate upon its expiration.

48.     Accordingly, pursuant to 28 U.S.C. § 2201, the City is entitled to a judgment declaring that it has no obligation to provide treatment and disposal services for wastewater collected by the District following the expiration of the 1975 Agreement and the 1983 Agreement.

WHEREFORE, Plaintiff, the City of Memphis, prays for the following relief:

1.     That proper process issue and be served upon each of the Defendants, requiring each of the Defendants to answer this Complaint within the time required by law;

2.     Entry of a judgment pursuant to 28 U.S.C. § 2201 declaring that the City of Memphis has no obligation, and cannot be compelled, to provide treatment and disposal services for wastewater collected by the District following the expiration of the 1975 Agreement and 1983

Agreement;

      3.      Award the City of Memphis all of its costs against Defendants;

      4.      For any such other and further relief, both general and specific, to which the City

of Memphis may be entitled.

Respectfully submitted,

BAKER, DONELSON, BEARMAN
 CALDWELL & BERKOWITZ, PC


/s Carmalita Carletos-Drayton
Carmalita Carletos-Drayton (TN #20001)
Mary Wu Tullis (TN #31339)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone:    901.526.2000
Fax:          901.577.2303
ccdrayton@bakedonelson.com
mtullis@bakerdonelson.com


CITY OF MEMPHIS LAW DIVISION

Bruce A. McMullen (TN #18126)
Chief Legal Officer/City Attorney
125 N. Main Street, Room 336
Memphis, Tennessee 38103
Telephone:    901.636.6614
Fax:          901.636.6524
Bruce.McMullen1@memphistn.gov

*Counsel for Plaintiff – City of Memphis*